UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

REACH MUSIC PUBLISHING, INC. and
DAVID REEVES,

       Plaintiffs,

  -v-                                                      No.  09 Civ. 5580 (LTS)

WARNER/CHAPPELL MUSIC, INC. and
PROTOONS, INC.,

       Defendants.

-------------------------------------------------------x

PROTOONS, INC.,

       Counterclaim Plaintiff,

  - v-

REACH MUSIC PUBLISHING, INC. and
DAVID REEVES,

       Counterclaim Defendants,

- and -

REACH GLOBAL, INC. and MICHAEL
CLOSTER,

       Additional Counterclaim
       Defendants.

-------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER**

       In this action arising out of disputes concerning the ownership of nine musical compositions originally performed by the musical group known professionally as Run DMC (the "Compositions"), David Reeves ("Reeves") and Reach Music Publishing, Inc. ("Reach Music" and,

collectively, "Plaintiffs") assert claims under the Copyright Act of 1976, 17 U.S.C. § 201 (the "Copyright Act") and state law, against Warner/Chappell Music, Inc. ("W/C Music") and Protoons Inc. ("Protoons" and, collectively, "Defendants") seeking a declaratory judgment that Plaintiffs are co-owners of the works and damages for Defendants' alleged breach of their duty to account to Plaintiffs for their respective shares of profits earned from exploitation of the Compositions.[1] The Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiffs have moved to amend the Complaint based on "Songwriter Agreements" produced in discovery that, according to Plaintiffs, demonstrate that Plaintiffs do not in fact have copyright interests in the Compositions (contrary to their allegations in the Complaint) but do provide that Plaintiffs are entitled to royalties. Plaintiffs' Proposed Amended Complaint ("PAC") would differ from the Complaint in four respects: the claims originally asserted under the Copyright Act would be withdrawn; W/C Music, whose potential liability rested entirely on Plaintiffs' copyright theory, would no longer be named as a defendant; and two claims against Protoons, premised upon the Songwriter Agreements, would be added. The Court has considered carefully the parties' submissions. For the reasons that follow, Plaintiffs' Motion to Amend the Complaint is denied.

BACKGROUND

Familiarity with the proceedings and submissions to date is assumed. Facts alleged in the Proposed Amended Complaint are taken as true for the purposes of the Court's analysis of whether Plaintiffs' amendment would be futile.

During the 1980s, Reeves co-authored certain musical compositions that were originally recorded by the musical group popularly known as Run DMC. In 1988 and 1989, Reeves

---

[1] The Court previously dismissed Plaintiffs' claim seeking a declaratory judgment that Defendants are time-barred under the Copyright Act from challenging Reeves' co-authorship of the Compositions. (Docket entry no. 19.)

personally executed a series of six agreements (the "Songwriter Agreements") assigning his copyright interests in the Compositions to non-party Rush Groove Music ("Rush Groove"), Protoons' predecessor-in-interest, in exchange for periodic payments to Reeves of a share of the income generated from the exploitation of the Compositions.  (PAC Ex. 2.)  The Songwriter Agreements expressly contemplate the future transfer of Rush Groove's interest in the Compositions to Protoons, providing that, if Rush Groove assigns the contracts to Protoons, Rush Groove shall not "be deemed to have delegated to Protoons . . . [nor shall Protoons] be deemed to have assumed, any of [Rush Groove's] warranties, representations, authorizations, duties, obligations, promises, agreements or liabilities hereunder."  (PAC Ex 2, at ¶ 9.)  The Songwriter Agreements also include Reeves' express covenant not to sue Protoons regarding the copyrights or other rights in the Compositions, and Reeves' release of Protoons "from all actions, suits, debts . . . claims and demands whatsoever . . . from the beginning of the world and continuing in perpetuity relating to the copyrights and all other rights in and to the Composition[s]."  (PAC Ex 2, at ¶ 14.)  Rush Groove made periodic accountings to Reeves pursuant to the Songwriter Agreements in 1988 and 1989.  Sometime thereafter, Protoons acquired Rush Groove's ownership interest in the Compositions.

On or about July 19, 2007, Reeves assigned to Reach Global, Inc. ("Reach Global"), Reach Music's predecessor-in-interest, a 50% co-publishing and co-ownership interest and a 100% administrative interest in his rights in the Compositions.  Reeves and Reach Global filed an action against Defendants in this Court on September 3, 2008.  On September 17, 2008, the Court issued an order requiring Reeves and Reach Global to demonstrate the basis for subject matter jurisdiction, after which they voluntarily withdrew their complaint.  On October 3, 2008, Reeves and Reach Global filed a complaint in New York State Supreme Court.  That action was dismissed on April 21, 2009, for lack of subject matter jurisdiction.  On June 12, 2009, Reach Global assigned its interest to

Reach Music, a plaintiff in this action. Plaintiffs filed the instant complaint in this Court on June 17, 2009. In each of the prior actions, as in the current Complaint in this one, Plaintiffs have asserted that they have copyright interests in the Compositions.

On December 10, 2009, the Court issued its Pre-Trial Scheduling Order in this case (the "Scheduling Order"), requiring that all applications to amend pleadings be made by January 29, 2010, and specifying that deadlines set forth in the Scheduling Order would not be adjourned except in the Court's discretion upon good cause. (Scheduling Order ¶¶ 1, 10.) Plaintiffs received the Songwriter Agreements, on which their proposed amendments are based, through discovery on or about January 22, 2010. (Pls.' Br. 5.) On May 7, 2010, over three months after both the deadline set forth in the Scheduling Order and the production of the Songwriter Agreements, Plaintiffs filed the instant motion to amend the Complaint. Defendant Protoons timely filed its opposition submission and Plaintiffs submitted their untimely reply submission on June 18, 2010, which the Court accepted.

In their reply submission, Plaintiffs proffer excerpts from an October 17, 1998, agreement between Rush Groove, Protoons, and others, that appears to transfer from Rush Groove to Protoons the interests in the Compositions[2] and also appears to assign to Protoons Rush Groove's obligations to make certain royalty payments for exploitation of the Compositions. (Ross Reply Decl. Ex. 1.)

DISCUSSION

Federal Rule of Civil Procedure 16 provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[A] district court [may] . . . deny[] leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover . . . a finding of 'good cause' depends on the

---

[2] Plaintiffs have only submitted three of the eight pages of the agreement.

diligence of the moving party."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).

It is undisputed that Plaintiffs' Motion to Amend their Complaint is untimely under the Scheduling Order.  Plaintiffs attribute the three-month time lag between their receipt of the Songwriter Agreements and the filing of their motion to amend to their preoccupation with the briefing of their motion to dismiss Protoons' counterclaim.  However, the latter motion was fully briefed by March 8, 2010, two months before the present motion was filed.  (Docket entry nos. 30, 31, 36, 37, 39 and 40).  Moreover, Reeves personally executed the Songwriter Agreements, and Plaintiffs have provided no explanation as to why Plaintiffs were not aware of those contracts prior to their production in discovery.  Plaintiffs have failed to demonstrate that they have been diligent and the Court concludes that, under Rule 16, Plaintiffs have not made the requisite showing of good cause to warrant modification of the Scheduling Order.  Plaintiffs' motion to amend is untimely and is properly denied on that basis.

Consideration of Plaintiffs' motion under Federal Rule of Civil Procedure 15, which provides that leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), similarly warrants denial of Plaintiffs' motion.  It is well-settled that leave to amend a complaint may be denied in the case of undue delay, bad faith, undue prejudice, or futility of the amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  An amendment is futile if it would not be capable of withstanding a motion to dismiss.  See Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). Defendants argue that Plaintiffs' motion to amend should be denied as futile, as well as untimely.

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007). For the reasons explained below, Plaintiffs' Proposed Amended Complaint does not satisfy this facial plausibility standard.

On a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference[.]" Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 2003). Accordingly, the Court may consider the six Songwriter Agreements attached to the Proposed Amended Complaint in evaluating Defendants' futility arguments. As noted above, Reeves covenanted, in those contracts, not to bring suit against Protoons over copyright issues and agreed to "release and discharge . . . Protoons . . . from all actions, suits, debts . . . claims and demands whatsoever . . . from the beginning of the world and continuing in perpetuity relating to the copyrights and all other rights in and to the Composition[s]." (PAC Ex. 2, at ¶ 14.) Moreover, the Songwriter Agreements contemplate that Rush Groove may assign the contracts to Protoons and provide that, should it elect to do so, Rush Groove shall not "be deemed to have delegated to Protoons . . . [nor shall Protoons] be deemed to have assumed, any of [Rush Groove's] warranties, representations, authorizations, duties, obligations, promises, agreements or liabilities hereunder." (PAC Ex 2, at ¶ 9.) The contracts also specifically address the payment of royalties, making clear that Reeves' collection right is against Rush Groove, rather than against Protoons:

> 14. [Reeves] shall look solely to [Rush Groove] for any and all payments due in connection with the use, reproduction and other exploitation of the Composition[s] . . ., even if Profile and or Protoons suspend their obligations to account and/or pay royalties or other sums to [Rush Groove]. Under no circumstances shall [Reeves] look to Profile or Protoons for any payments in connection with the use, reproduction, or other exploitation of the Composition[s]. [Reeves] hereby releases and discharges . . . Protoons, Inc., . . . from all actions, suits, debts, . . . sums of money, . . . claims and demands whatsoever . . . which against . . . Protoons, Inc., . . . [Reeves] ever had, now had, or hereafter can, shall or may, have for upon, or by any reason of any matter, cause or thing from the beginning of the world and continuing in perpetuity relating to the copyrights and all other rights in and to the Composition[s]. . . . Without limitation of the foregoing, in the event that . . .

> Protoons elects to suspend its . . . obligations to [Rush Groove], neither Profile nor Protoons shall have any obligation to [Reeves] and no such suspension shall affect the validity or enforceability of this agreement.
>
> 15.   This agreement . . . cannot be terminated or amended except by a writing signed by all of the parties hereto.

(PAC Ex 2.)  The clear and unambiguous terms of the Songwriter Agreements thus preclude the proposed royalty claim against Protoons, obligating Plaintiffs to look solely to Rush Groove for any outstanding royalty payments.

Nor does Plaintiffs' allegation in the Proposed Amended Complaint that "Protoons has now succeeded to the direct rights and obligations of Rush Groove Music under the Songwriter Agreements, making [Reeves' release of Protoons] inapplicable and unenforceable" (PAC ¶ 36) suffice to overcome the anti-suit provisions of the Songwriter Agreements.  Plaintiffs' original motion proffered nothing more than this conclusory allegation.  In their reply submission, Plaintiffs proffered, in addition, three pages of what appears to be an eight-page October 17, 1998, agreement among Protoons, Rush Groove and certain parties referred to as Artists, under which Rush Groove has assigned its interests in the Compositions to Protoons and Protoons agreed, inter alia, "to assume Artist's obligations (as assignee of Rush Groove pursuant to paragraph 6(b) of the Settlement Agreement) to account and pay royalties to the writings and composers of the Compositions arising from the sales of phonograph records and other uses . . . of the Compositions occurring after December 31, 1998, pursuant to the terms set forth in the Songwriter Agreements."  (Ross Decl. Ex. 1, ¶¶ 5(b)-(c).)  Reeves is not named as a party to this agreement, and Plaintiffs have not proffered the "Settlement Agreement" referred to therein.  Plaintiffs nonetheless argue that Protoons' assumptions of the "Artist's" royalty obligations gives them the right to collect royalties from Protoons and that any other result would render the Songwriter Agreements illusory and void.

As a threshold matter, Plaintiffs' arguments are not properly before the Court because they are raised for the first time on reply. See McBride v. BIC Consumer Products Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). The procedural defect aside, Plaintiffs' arguments fail on the merits. Plaintiffs' argument is inconsistent with the provisions of the Songwriter Agreement reviewed above, and misperceives the plain legal import of that agreement. Rush Groove is the royalty obligor under the Songwriter Agreements notwithstanding any later assignments of rights to Protoons. Nothing in any document Plaintiffs have proffered demonstrates any release by Plaintiffs of Rush Groove from that obligation, nor any agreement by Protoons to give up its rights under the release and covenant not to sue. Thus, Plaintiffs have failed to offer facts demonstrating plausibly that they have a viable right of action as against Protoons and their proposed amendment of the Complaint would be futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend their Complaint is denied as untimely and futile. This Order resolves docket entry no. 46.

In light of Plaintiffs' concessions in their motion to amend their Complaint that their copyrights causes of action are not viable, Plaintiffs are directed to show cause, by written submission filed by **August 10, 2010** (with a courtesy copy to Chambers), why their Complaint should not be dismissed in its entirety, with prejudice.

SO ORDERED.

Dated: New York, New York
August 3, 2010

_____
LAURA TAYLOR SWAIN
United States District Judge