UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

REACH MUSIC PUBLISHING, INC. et al.,

       Plaintiffs,

    -v-

WARNER/CHAPPELL MUSIC, INC. et al.,

       Defendants.

-------------------------------------------------------x

PROTOONS, INC.,

       Counterclaim Plaintiff,

    -v-

REACH MUSIC PUBLISHING, INC. et al.,

       Counterclaim Defendants,

-and-

REACH GLOBAL, INC. et al.,

       Additional Counterclaim
       Defendants.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 0 7 SEP 2011

No.  09 Civ. 5580 (LTS)(GWG)

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:

## MEMORANDUM OPINION AND ORDER

      Protoons, Inc. ("Protoons"), has interposed Amended Counterclaims against David

Reeves, Reach Music Publishing, Inc. ("Reach Music"), Reach Global, Inc. ("Reach Global"), and

Michael Closter (collectively "Counterclaim Defendants") asserting causes of action for breach of

contract, tortious interference with contract, and slander of title. The Counterclaim Defendants now move to dismiss the Amended Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain portions of the Amended Counterclaims pursuant to Federal Rule of Civil Procedure 12(f).

The Court has jurisdiction of the counterclaims pursuant to 28 U.S.C. § 1332. For the following reasons, Counterclaim Defendants' motions to dismiss and strike certain portions of the Amended Counterclaims are granted in part and denied in part.

## BACKGROUND

Familiarity with the procedural history of this case is presumed. Briefly, David Reeves and Reach Music ("Plaintiffs") initially brought this action against Protoons and Warner/Chappell Music, Inc., alleging violations of the Copyright Act of 1976, 17 U.S.C. § 201 (the "Copyright Act"). On May 7, 2010, Plaintiffs moved to amend the complaint to withdraw the Copyright Act claims and their claims against Warner/Chappell Music, Inc., and to introduce two new claims for breach of contract against Protoons. On August 3, 2010, the Court denied Plaintiffs' motion to amend the complaint based principally upon procedural defects in the motion for leave to amend the complaint. (Mem. Op., Dkt. No. 60.) Because of Plaintiffs' concession that their Copyright Act claims were not viable, the Court directed Plaintiffs to show cause by written submission filed by August 10, 2010, why their complaint should not be dismissed with prejudice. Plaintiffs failed to file a responsive submission. Accordingly, the Court dismissed Plaintiffs' complaint in its entirety, with prejudice. (Order, Dkt. No. 61.) Protoons' Amended Counterclaims are the only claims remaining in this action.

The following facts, alleged in the Amended Counterclaims, are taken as true for the

purposes of this motion.  See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  Protoons is a music publisher in the business of licensing and exploiting musical compositions.  (Am. Counterclaims ¶ 1.)  Reach Global, Reach Music, and Michael Closter (collectively the "Reach Parties") are also in the music publishing business.  (Id. ¶¶ 2-4.)  David Reeves is a songwriter who co-authored certain musical compositions for the group known as Run-D.M.C. (the "Compositions").  (Id. ¶¶ 5, 13.)

In or about 1983, Run-D.M.C. signed an exclusive recording and publishing agreement with Rush Productions, Inc. ("Rush Productions"), and its affiliated music publishing entity, Rush Grove Music ("Rush Groove," collectively the "Rush Parties").  (Am. Counterclaims ¶ 11.)  The Rush Parties entered into an agreement with Protoons' affiliated record label, Profile Records, pursuant to which Profile Records obtained the exclusive recording services of Run-D.M.C., along with copyright and administrative rights in the Compositions.  (Id.)  The Amended Counterclaims arise out of a series of contracts executed by David Reeves in the 1980s, pursuant to which he assigned to Rush Groove his interest in the Compositions (the "Songwriter Agreements").  Each writer who worked on a Run-D.M.C. composition signed a songwriter agreement transferring his interest to Rush Groove.  (Id. ¶ 13.)  The Songwriter Agreements contained identical language, and are at the center of the instant dispute.[1]  Protoons eventually acquired a 100% copyright interest

---

[1]     The Amended Counterclaims reference all the Songwriter Agreements and allege that each agreement contains the same provisions and language.  (Am. Counterclaims ¶ 17.)  The Counterclaim Defendants have proffered a complete copy of the agreement executed by David Reeves on May 1, 1988, which assigned his entire copyright interest in the composition titled "Run's House" to Rush Groove.  (Decl. of Lisa M. Buckley in Supp. of Counterclaim Defs.' Mot. to Dismiss the Am. Counterclaims ("Buckley Decl.") Ex. 2.)  The Court refers to this agreement in evaluating the Amended Counterclaims and assumes, as alleged in the Amended Counterclaims, that each of the Songwriter Agreements contains identical provisions.

in Run-D.M.C.'s musical compositions. (Id. ¶ 12.)

The Songwriter Agreements acknowledge that each musical composition was a "work made for hire" as defined in the Copyright Act.  (Id. ¶ 13.)  The Songwriter Agreements provide that each writer "sells, assigns and transfers and sets over to [Rush Groove], its successors and assigns, for the world," the musical compositions.  (Id.)  Therefore, as Reeves acknowledged, he did not have a cognizable claim under the Copyright Act.

The Songwriter Agreements expressly contemplate the prospective assignment of Rush Groove's interest in the Compositions to Protoons.  (Id. ¶ 17.)  The Songwriter Agreements provide, however, that, if Rush Groove assigns the contracts to Protoons, Rush Groove shall not "be deemed to have delegated to Protoons . . . [nor shall Protoons] be deemed to have assumed, any of [Rush Groove's] warranties, representations, authorizations, duties, obligations, promises, agreements, or liabilities hereunder." (Id.)  The Songwriter Agreements also include a covenant not to sue Protoons regarding the Compositions, and Reeve's release of Protoons "from all actions, suits, debts . . . claims and demands whatsoever . . . from the beginning of the world and continuing in perpetuity relating to the copyrights and all other rights in and to the Composition[s]." (Id. ¶¶ 19-20.)

On October 17, 1998, Protoons, the Rush Parties, individual members of Run-D.M.C. and other third parties entered into an agreement that altered the relationship between Protoons and the Rush Parties (the "1998 Agreement").  (Id. ¶ 18.)  Reeves was not a party to this agreement.  In the 1998 Agreement, Protoons assumed the Rush Parties' obligations under the Songwriter Agreements:  "Protoons hereby agrees to assume Artist's obligations (as assignee of Rush Groove pursuant to paragraph 6(b) of the Settlement Agreement) to account and pay royalties

to the writers and composers of the Compositions arising from sales of phonograph records and other uses and/or exploitations of the Compositions occurring after December 31, 1998, pursuant to the terms set forth in the Songwriter Agreements."[2] (Buckley Decl. Ex. 1 ¶ 5(c).)  Moreover, the 1998 Agreement further provides that "[t]he parties hereto agree that in the event of any inconsistency in the terms or conditions of the Songwriter Agreements, the Settlement Agreement and/or this agreement, the terms of this agreement shall control." (Id. ¶ 7 (emphasis supplied).)

On or about July 19, 2007, Reeves assigned to Reach Global a 50% interest "in all worldwide right, title, interest, and ownership of every nature, kind and description in and to the [Compositions] . . ." (the "2007 Agreement").  (Id. ¶ 36.)  In approximately May 2009, Closter created Reach Music, which was to receive the interest in the Compositions from Reach Global.  Counterclaim Defendants allege that, prior to July 19, 2007, Closter and the Reach Parties were aware of the Songwriter Agreements and that they were aware that Reeves did not have a copyright interest in the Compositions.  (Id. ¶¶ 37-48.)

The Amended Counterclaims allege that the Reach Parties have filed three separate actions against Protoons.  (Id. ¶¶ 59-60.)  The first action was filed in federal court on September 3, 2008.  (Id. ¶ 59.)  The second action was filed in New York state court on October 2, 2008.  (Id. ¶ 60.)  The third case, which is the one before this Court, was filed on June 17, 2009.  (Id. ¶ 61.)

---

[2]    The 1998 Agreement defines "Artist" as the individual members of Run-D.M.C.: Darryl McDaniels, Joseph Simmons and Jason Mizell.  For purposes of the 1998 Agreement, they are "jointly and severally" referred to as the "Artist."  (Buckley Decl. Ex. 1 ¶ iii.)  "Settlement Agreement" is defined as "the settlement agreement dated as of December 28, 1995, effective as of June 30, 1995, by and among Profile Records, Inc., the Protoons Parties, The Rush Parties and Artist . . ."  (Id ¶ 1.)  The Settlement Agreement was not submitted to the Court in connection with this motion practice.

## DISCUSSION

In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the non-conclusory factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard governs pleadings in all civil actions. Iqbal, 129 S.Ct. at 1953. It is thus applicable to the instant motion to dismiss the Amended Counterclaims.

When deciding a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In evaluating the sufficiency of the Amended Counterclaims, the Court has also considered Reeves' 1988 Songwriter Agreement and the 1998 Agreement.

Breach of Contract

The Amended Counterclaims set forth two independent claims for breach of contract. First, Protoons asserts that Reeves breached the Songwriter Agreements when he purported to grant and transfer a copyright interest in the Compositions to Reach Global via the 2007 Agreement. (Am. Counterclaims ¶ 50.)  Second, Protoons asserts that Reeves violated the express covenant not to sue contained in the Songwriter Agreements when, on three separate occasions, he filed lawsuits against Protoons. (Id. ¶ 51.)

"To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). "Under New York law, a plaintiff must allege the specific provisions within a contract upon which the breach of contract claim is based." Boehner v. Heise, 734 F. Supp. 2d 389, 408 (S.D.N.Y. 2010) (citing Sheridan v. Trustees of Columbia Univ. in City of N.Y., 296 A.D.2d 314, 315 (N.Y. Sup. Ct. 2002); Matter of Sud v. Sud, 211 A.D.2d 423, 424 (N.Y. Sup. Ct. 1995)).

Protoons first claim is unsupported by the pleadings. The Amended Counterclaims fail to point to any provision of the Songwriter Agreements that was violated when Reeves executed the 2007 Agreement with Reach Global. See, e.g., Boehner, 734 F. Supp. at 408 (dismissing breach of contract claim where plaintiff failed to cite a specific provision within the agreement that was allegedly breached). Protoons merely alleges a general harm to its copyright interest in the Compositions. To the extent Protoons' breach claim is premised on the inconsistency between the transfer of Reeves' copyrights in the Songwriters Agreements, on the one hand, and his purported transfer of such rights to Reach in the 2007 Agreement, Protoons fails to state a breach of contract claim because no provision of the contract addresses such subsequent conduct.

In its second set of breach of contract allegations, Protoons adequately pleads that Reeves breached the express covenant not to sue provision of the Songwriter Agreements. The Amended Counterclaims allege that Reeves executed the Songwriter Agreements and that Reeves breached the anti-suit provision when he sued Protoons. Protoons alleges that it has suffered damages as a result including, inter alia, litigation costs spent defending against the lawsuits. The

clear and unambiguous terms of the Songwriter Agreements prohibit Reeves from seeking to

recover royalties from Protoons.  The agreement provides in pertinent part:

> Writer [Reeves] shall look solely to Publisher [Rush Groove] for any
> and all payments due in connection with the use, reproduction and
> other exploitation of the Composition and in connection with the
> enforcement of any rights or remedies which Writer may have
> hereunder, even if Profile or Protoons suspend their obligations to
> account and/or pay royalties or other sums to Publisher.  Under no
> circumstances shall Writer look to Profile or Protoons for any
> payments in connection with the use, reproduction or other
> exploitation of the Composition.  . . .  Without limitation of the
> foregoing, in the event that Profile or Protoons elects to suspend its
> or their obligations to Publisher, neither Profile nor Protoons shall
> have any obligation to Writer and no such suspension shall affect the
> validity or enforceability of this agreement.

(Buckley Decl. Ex. 2 ¶ 14.)

Counterclaim Defendants assert, however, that the 1998 Agreement between the

Rush Parties and Protoons precludes the claim of breach by rendering inoperative the anti-suit

provision of Reeves' Songwriter Agreements.  The Counterclaim Defendants rely upon paragraph 7

of the 1998 Agreement, which provides:  "[t]he parties hereto agree that in the event of any

inconsistency in the terms of conditions of the Songwriter Agreements, the Settlement Agreement

and/or this agreement, the terms of this agreement shall control."  (Buckley Decl. Ex. 1 ¶ 7.)  The

Counterclaim Defendants assert that the anti-suit covenant in the Songwriter Agreements is

inconsistent with the provisions in the 1998 Agreement pursuant to which Protoons assumes Rush

Groove's obligations under the Songwriter Agreements and thus is superseded by the 1998

Agreement's provisions for royalty payments by Protoons.  Counterclaim Defendants' reliance on

the 1998 Agreement fails, however, for the simple reason that Reeves was not a party to the 1998

Agreement.  Paragraph 7 of the 1998 Agreement by its terms is a covenant among the parties to that

agreement.  Nothing in it purports to alter the rights or remedies of non-parties.  Indeed, the 1988

Songwriter Agreement provided that Reeves "is not and shall not be deemed to be a third party

beneficiary of any agreement or understanding between [Rush Groove] and Protoons Inc."

(Buckley Decl. Ex. 2 ¶ 9.)

                Protoons' counterclaim for breach of the Songwriter Agreements' covenant not to

sue provision is, accordingly, plausibly pleaded and Counterclaim Defendants' motion to dismiss

that counterclaim will be denied.

                Furthermore, to the extent Counterclaim Defendants argue that the Amended

Counterclaims are insufficient because Protoons fails to allege damages for breach of contract, their

position is unavailing.  Protoons alleges that, as a result of the lawsuits filed by Counterclaim

Defendants, it has suffered damages including "costs and attorneys' fees related to defending itself

and its licensees and assigns in the three actions."  (Id. ¶ 14.)  This damages allegation is pertinent,

and sufficient, with respect to the claim of breach of the covenant not to sue.

Tortious Interference with Contract

                The Amended Counterclaims allege that the Reach Parties induced Reeves to breach

the Songwriter Agreements by (1) entering into the 2007 Agreement purporting to transfer his

copyright interest, and (2) by suing Protoons.  (Am. Counterclaims ¶¶ 58-63.)  Protoons further

claims that "the willingness of Reach Global, Reach Music, Michael Closter and David Reeves to

wrongly assert copyright interests in Run-D.M.C. Compositions . . . induced the members of Run-

D.M.C., Russell Simmons and/or Rush Groove Music to breach the various warranties,

representations and obligations undertaken by them to Protoons, including but not limited to their

obligations under the 1998 Agreement."  (Am. Counterclaims ¶ 65.)  Counterclaim Defendants

argue that the Amended Counterclaims are insufficient because Protoons fails to allege that (1) the

Reach Parties had actual knowledge of the Songwriter Agreements, and (2) the Reach Parties'

conduct was the "but for" cause of Reeve's alleged breach.  They further assert that the Reach

Parties were acting in their own economic interest, which is a defense to a tortious interference with

contract claim.  As to the claim regarding inducement of the Run-D.M.C.-related parties to breach

their agreements, Counterclaim Defendants assert that the counterclaim must fail because none of

those persons or entities is a party to this action.  The Court finds each of these arguments to be

unavailing, although the counterclaim will be dismissed as insufficiently pleaded to the extent it

relates to the Reeves/Reach 2007 Agreement and alleged breaches by the Run-D.M.C.-related

parties.

> To establish tortious interference with an existing contract under New York law,

Protoons must plead "(1) the existence of a valid contract between the plaintiff and a third party;

(2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the

third-party's breach of the contract without justification; (4) actual breach of the contract; and (5)

damages resulting therefrom."  Kirch v. Liberty Media Corp., 449 F.3d 388, 401–02 (2d Cir. 2006)

(quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996) (internal quotation

marks omitted)); see also Foster v. Churchill, 87 N.Y.2d 744 (1996).

> To the extent the Amended Counterclaim asserts a tortious interference claim

premised on the execution of the 2007 Agreement as a breach of the Songwriter Agreements'

copyright transfer provisions, it fails to state a claim because, as explained above, Protoons has

failed to identify any provision of the Songwriter Agreements that was breached by Reeves'

assertion of a subsisting right in the Compositions.  Because no actual breach of the Songwriter

Agreements has been pleaded in this regard, the claim fails. See Museum Boutique Intercontinental, Ltd. v. Picasso, 886 F. Supp. 1155, 1161 (S.D.N.Y. 1995) (holding that under New York law to plead a claim for tortious interference with contract a pleader is required to show a breach of the underlying contract). The tortious interference with contract counterclaim is similarly insufficient insofar as it is premised on alleged breaches by the Run-D.M.C.-related entities and individuals. The Amended Counterclaims identify no specific provision of any contract that was allegedly breached. Protoons' brief cites paragraphs 6(a) and (b) of the 1998 Agreement. Those subdivisions consist solely, however, of representations by the Run-D.M.C.-related entities and individuals that they were authorized to enter into and perform the 1998 Agreement and the Settlement Agreement referred to therein. Nothing on the face of that document or in the Amended Counterclaims identifies any possible breach of those 1998 representations by reason of actions allegedly prompted by Counterclaim Defendants' assertions of copyright interests in the Compositions several years later. Nor is intentional conduct by the Counterclaim Defendants alleged in this regard – the Amended Counterclaims merely assert that the "willingness" of the Counterclaim Defendants to assert copyright interests "induced" the Run-D.M.C.-related individuals and entities to breach unspecified warranties, representation and obligations. (Am. Counterclaims ¶ 65.)

The Amended Counterclaims are, however, sufficient to plead a tortious interference claim with regard to Protoons' allegations that the Reach Parties induced Reeves to breach the anti-suit provision in the Songwriter Agreements. The Amended Counterclaims sufficiently allege that the Reach Parties knew about the existence of the Songwriter Agreements prior to September 3, 2008, when Reeves and Reach Global filed their first action against Protoons. (See Am.

Counterclaims ¶ 59.)  The Amended Counterclaims allege that, sometime in 2006, Warner/Chappel, a Protoons licensee, informed Reeves' counsel that it had acquired rights to exploit "Run's House," one of the Compositions, from Protoons. (Id. ¶ 39.)  Protoons alleges that, in 2007, Closter met with Reeves' then-counsel to obtain the file on the dispute over the "Run's House" song and that, as a result, Closter became aware that Protoons claimed rights to the Compositions.  (Id. ¶ 40.)  The Amended Counterclaims also allege that, prior to 2007, Closter was in contact with the individual members of Run-D.M.C. and at some point obtained from them the 1998 Agreement, which expressly references the Songwriter Agreements and Protoons' rights therein.  (Id. ¶¶ 43-44.)  Furthermore, the Amended Counterclaims allege that Protoons' counsel, on June 2, 2008, expressly informed the Reach Parties of Protoons' rights in the Compositions pursuant to the Songwriter Agreements.  (Id. ¶ 48.)  Reeves and the Reach Parties filed the first lawsuit against Protoons on September 3, 2008.  (Id. ¶ 59.)  The Amended Counterclaims sufficiently allege knowledge on the part of the Reach Parties.  The Amended Counterclaims also adequately plead that the Reach Parties induced Reeves to participate in all three actions against Protoons and that, but for their involvement, Reeves would not have breached the Songwriter Agreements. (Id. ¶¶ 62-64.)

The Reach Parties also argue that they were motivated by their own economic interest in the Compositions, which is a defense to a claim for tortious interference with contract. Under New York law, "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." Foster, 87 N.Y.2d at 750; accord Don King Prods., Inc. v. Smith, 47 F. App'x 12, 15 (2d Cir. 2002).  It is improper for the Court to make a determination at this juncture as to the economic interest defense.  A motion pursuant to Rule

12(b)(6) addresses the sufficiency of the pleadings; the facts upon which the Reach Parties premise this defense are not developed in the pleadings. Matters extraneous to the pleadings are generally inappropriate for consideration on a motion to dismiss a claim.

Slander of Title

Protoons' cause of action for slander of title against Reeves is untimely. Under New York law, slander of title claims are subject to a one-year statute of limitations, which begins to run on the date the allegedly slanderous statements are uttered. N.Y. C.P.L.R. § 215(3) (McKinney 2006); See Karam v. First Am. Bank of N.Y., 593 N.Y.S.2d 640, 642 (App. Div. 1993); Friedman v. JP Morgan Chase Manhattan Bank, No. 102788/08, 2008 WL 2891302, at *3 (N.Y. Sup. Ct. July 11, 2008); accord Smith v. Soros, No. 02 Civ.4229, 2003 WL 22097990, at *7 (S.D.N.Y. Sept. 5, 2003).

Protoons asserts that the statute of limitations for its slander claim began to run on June 17, 2009, the date upon which Reeves filed his latest lawsuit. Protoons' counterclaim for slander of title was filed on November 20, 2009, approximately five months later, which Protoons argues is within the one-year period. However, "communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings" are absolutely privileged. Rosenberg v. MetLife, Inc., 8 N.Y.3d 359, 365 (2007); cf. Kelly v. Albarino, 485 F.3d 664, 665-66 (2d Cir. 2007) (applying New York's absolute privilege with respect to affidavit filed with court); Singh v. HSBC Bank USA, 200 F. Supp. 2d 338, 340 (S.D.N.Y. 2002) (holding that under New York law, statements by parties and their attorney in the context of a legal proceeding are absolutely privileged). Therefore, Protoons may not rely upon Reeves' allegations in any of his filed complaints to satisfy the statute of limitations. The only other false utterance

alleged in the Amended Counterclaims is that, in or about 2006, Reeves falsely communicated to several third parties that he had not entered into any previous agreements assigning his copyright interest in the Compositions. (Am. Counterclaims ¶ 38.) Because Protoons' counterclaim for slander was not filed until November 20, 2009, approximately three years later, it is clearly untimely and will therefore be dismissed.

### Counterclaim Defendants' Motion to Strike

Counterclaim Defendants also move to strike five paragraphs from the Amended Counterclaims. Federal Rule of Civil Procedure 12(f) authorizes motions to strike from pleadings insufficient defenses "or any redundant, immaterial, impertinent or scandalous matter." "Motions to strike are generally disfavored and will be denied unless the matter asserted clearly has no bearing on the dispute or the matter is significantly prejudicial to one of the parties." Citigroup, Inc. v. Wachovia Corp., 613 F. Supp. 2d 485, 489 (S.D.N.Y. 2009). "It is settled in this Circuit that the motion will be denied 'unless it can be shown that no evidence in support of the allegation would be admissible.'" Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)). Accordingly, courts should avoid tampering with the pleadings under Rule 12(f) absent a compelling reason. See S.E.C. v. Treadway, No. 11 Civ. 1534, 2011 WL 2623469, at *1 (S.D.N.Y. June 29, 2011).

Counterclaim Defendants fail to show how the facts alleged in paragraphs 30-35 are "redundant, immaterial, impertinent, or scandalous." The paragraphs discuss the allegedly acrimonious relationship among Protoons, Run-D.M.C. and Rush Groove and relate to the genesis of the 1998 Agreement that is the subject of arguments in connection with the counterclaims and

anticipated defenses thereto.  They are not completely irrelevant or duplicative, and Counterclaim Defendants' claim of prejudice consists only of conclusory assertions that the paragraphs are misleading.  Therefore, the motion to strike is denied.

### CONCLUSION

For the foregoing reasons, Counterclaim Defendants' motion to dismiss the Amended Counterclaims is denied in part and granted in part.  The motion to dismiss is denied as to the First Counterclaim against Reeves insofar as it asserts breach of the covenant not to sue in the Songwriter Agreements; the motion is granted with regard to the breach of contract allegations based on Reeves' entry into the 2007 Agreement.  The motion to dismiss is granted as to the Second Counterclaim, for slander of title.  The Third Counterclaim is dismissed insofar as it asserts tortious interference on the part of the Run-D.M.C.-related entities; it is denied as to the tortious interference claim against the Reach Parties in connection with the Songwriter Agreements.  The motion to strike is denied in its entirety.

This Memorandum Opinion and Order resolves docket entry nos. 75 and 78.  The parties are directed to meet with Magistrate Judge Gorenstein promptly for settlement purposes and to address any outstanding pretrial issues.

SO ORDERED.

Dated: New York, New York
        September 7, 2011

LAURA TAYLOR SWAIN
United States District Judge