UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

REACH MUSIC PUBLISHING, INC. and
DAVID REEVES,

        Plaintiffs,

-v-                                              No. 09 Civ. 5580 (LTS)

WARNER/CHAPPELL MUSIC, INC. and
PROTOONS, INC.,

        Defendants.

-------------------------------------------------------x

PROTOONS, INC.,

        Counterclaim Plaintiff,

- v-

REACH MUSIC PUBLISHING, INC. and
DAVID REEVES,

        Counterclaim Defendants,

- and -

REACH GLOBAL, INC. and MICHAEL
CLOSTER,

        Additional Counterclaim
        Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

        Protoons, Inc. ("Protoons"), has interposed Amended Counterclaims against David

Reeves, Reach Music Publishing, Inc. ("Reach Music"), Reach Global, Inc. ("Reach Global"),

and Michael Closter (collectively "Counterclaim Defendants"), asserting causes of action for breach of contract and tortious interference with contract.

Currently before the Court are two applications. Protoons has moved to strike certain of the Counterclaim Defendants' affirmative defenses. Counterclaim Defendants, while opposing Protoon's motion, have also attempted to file an amended Answer with proposed amended affirmative defenses. For the following reasons, the proposed Amended Answer with defenses will be accepted and the motion to strike the originally filed affirmative defenses will be denied as moot, without prejudice to renewal against the amended affirmative defenses.

## Background

Familiarity with the procedural history of this case is presumed. The following facts are taken from the Counterclaim Defendants' amended Answer with amended affirmative defenses ("Amended Answer," docket entry no. 116) or from materials integral to the Amended Answer.

David Reeves is a songwriter who co-authored certain musical compositions for the group known as Run-D.M.C. In the late 1980s, Reeves signed a series of contracts (the "Songwriter Agreements"), in which he assigned his interest in those compositions to an entity named Rush Groove. Reeves contends that he signed the Songwriter Agreements without reading them and without legal representation.

The Songwriter Agreements expressly contemplate the prospective assignment of Rush Groove's interest in the Reeves' composition to Protoons and provide that, if Rush Groove assigns the contract to Protoons, Rush Groove shall not "be deemed to have delegated to Protoons . . . [, nor shall Protoons] be deemed to have assumed, any of [Rush Groove's] warranties, representations, authorizations, duties, obligations, promises, agreements, or liabilities

thereunder."[1] (May 1, 1998 Songwriter Agreement.) The Songwriter Agreements also include a release and covenant not to sue, which provides:

> [David Reeves] hereby releases . . . Protoons . . . from all actions, suits, . . . contracts, . . . damages, judgments, executions, claims and demands whatsoever . . . [that] [Reeves] ever had, now has, or hereafter can, shall or may, have . . . from the beginning of the world and continuing in perpetuity . . . .

(May 1, 1988 Songwriter Agreement, p. 5.)

Counterclaim Defendants allege that, some time after Reeves executed the Songwriter Agreements, Protoons "induced" Rush Groove to assign all of the rights and payment obligations regarding the Reeves' compositions to Protoons. (Am. Answer ¶ 72.) Rush Groove then went out of business. Protoons continues to profit from the Reeves' compositions, while Reeves receives "effectively . . . no income from the Compositions." (Id.)

In 2007, Reeves assigned to Reach Global a 50% interest in the compositions and a 100% interest in the exclusive administration rights to the Compositions.

Reeves and the other Counterclaim Defendants commenced the instant action, asserting copyright claims against Protoons, and Protoons filed certain counterclaims. The Court dismissed the Counterclaim Defendants' claims, after having denied their motion to amend their claims. The Court also dismissed some of Protoon's counterclaims. The only remaining claims

---

[1] The Amended Answer references all of the Songwriter Agreements and suggests that they contain materially identical language. (Am. Answer with Prop. Am. Aff. Def. ¶¶ 68-84, docket entry no. 116.) The Counterclaim Defendants proffered a complete copy of an agreement, which was executed by David Reeves on May 1, 1988, and which assigned Reeves' entire copyright interest in the composition titled "Run's House" to Rush Groove. (May 1, 1988, Songwriter Agreement ("May 1, 1998 Agreement"), Ex. 2, Decl. of Lisa M. Buckley in Supp. of Counterclaim Defs.' Mot. to Dismiss the Am. Counterclaims, docket entry no. 76.) The Court has considered the May 1, 1988, agreement for the purposes of the instant applications, as it is integral to the parties' counterclaims and defenses.

in this action are Protoons' counterclaims for breach of contract, asserted against Reeves, for breach of the Songwriter Agreements' covenant not to sue, and for tortious interference, asserted against Reach Music, Reach Global and Michael Closter, for inducement of Reeves to assign to Reach Global an interest in the compositions and their administration.

In their original Answer to Protoons' Counterclaims, the Counterclaim Defendants asserted 19 affirmative defenses, 15 of which Protoons has moved to strike as futile. Counterclaim Defendants filed a memorandum of law in opposition to Protoons' motion and, on the same day, filed the Amended Answer, including a proposed amended set of affirmative defenses. The proposed amended affirmative defenses allege, inter alia, that "Protoons deliberately contemplated the unconscionable arrangement [whereby Reeves would lose all remedy for royalties withheld from him]," "Reeves . . . was pressured into signing the onerous Songwriter Agreements . . . without benefit of counsel," and "[Protoons] induce[d] . . . Rush Groove . . . to wrongfully assign [its] rights to Protoons." (Am. Answer ¶¶ 97, 99.)

## Analysis

Protoons argues that the Court should decline to accept Counterclaim Defendants' proposed amended affirmative defenses because the proposed amendments would be futile, and that the Court should strike the majority of the Counterclaim Defendants' original affirmative defenses because they, too, are futile.

Legal Standard for Allowing Amendments to Pleadings

Leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). "The party opposing a motion to amend bears the burden of establishing that an amendment would be futile," and "[a] proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)" of the Federal Rules of Civil Procedure. <u>Ballard v. Parkstone Energy, LLC</u>, 06 Civ. 13099, 2008 WL 4298572, *3 (S.D.N.Y. Sept. 19, 2008) (citations and some internal punctuation omitted).

<u>Legal Standard for Evaluating a Motion to Strike</u>

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" <u>Coach, Inc. v. Kmart Corporations</u>, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (citation omitted). "In order for a court to strike a defense as insufficient: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." <u>Id.</u> (citation omitted). "In considering the sufficiency of a defense under the first two prongs of the analysis, courts apply the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." <u>Id.</u> (citation omitted).

Because the standard for allowing amended affirmative defenses and the standard for striking affirmative defenses overlap substantially—both looking to Rule 12(b)(6)—, justice and efficiency are served by accepting Counterclaim Defendants' Amended Answer as the definitive iteration of their affirmative defenses, and allowing defendants to brief any application

to strike those defenses, before the Court evaluates whether the defenses satisfy the applicable standard.

## Conclusion

For the foregoing reasons, Counterclaim Defendants' Amended Answer (docket entry no. 116) is accepted. Protoons' motion to strike the original affirmative defenses is denied as moot, without prejudice to renewal against the amended affirmative defenses. Any motion to strike the amended affirmative defenses in whole or in part must be filed by **September 4, 2012.** This Memorandum Order resolves docket entry number 111.

SO ORDERED.

Dated: New York, New York
July 31, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge