UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

PROTOONS INC.,

                               Counterclaimant,

                 -v-

REACH MUSIC PUBLISHING, INC. and
DAVID REEVES,

               Counterclaim Defendants,

                 -and-

REACH GLOBAL INC. and MICHAEL
CLOSTER,

         Additional Counterclaim Defendants.

-------------------------------------------------------------------X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>February 19, 2016</u> |

09 Civ. 5580 (KBF)

<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

      This action traces its lineage back to an initial suit commenced in 2008.

(ECF No. 1 in 08-cv-7722 (LTS).)  At that time, plaintiffs/counterclaim defendants

David Reeves ("Reeves") and Reach Music Publishing ("Reach") brought suit against

defendant/counterclaimant Protoons Inc.[1] ("Protoons") seeking damages and a

declaration of copyright ownership of songs Reeves had co-authored for the musical

group Run–D.M.C. in the 1980s.  (ECF No. 1.)  The lawsuit ignored an obvious

weakness: Reeves had long before assigned all of his rights in the compositions to

an entity called Rush Groove and specifically agreed not to look to Protoons for

payment.  Reeves and Reach's original claims were dismissed with prejudice.  (ECF

---

[1] Reeves and Reach's complaint also named Warner/Chappell Music, Inc. as a defendant; that party
has not asserted counterclaims.

Nos. 60 & 61.)  The litigation did not end, however, because by then Protoons had asserted counterclaims against Reeves for breach of contract and Reach[2] for tortious interference.  (ECF Nos. 23 & 68.)  The Court granted Protoons summary judgment on its breach of contract counterclaim, (ECF No. 258) and following a bench trial in March 2015 found for Protoons on the tortious interference counterclaim as well. (ECF No. 292.)

Now before the Court is Protoons's motion for damages, legal fees, and expenses, which the parties have submitted for a trial on the papers.  (ECF Nos. 309 & 334.)  As set forth below, Reeves and Reach are jointly and severally liable[3] for the attorney's fees and costs associated with Protoons's defense of the original claims and with its prosecution of the breach of contract counterclaim, but not for those associated solely with prosecuting the tortious interference counterclaim.

I.      FACTUAL BACKGROUND[4]

In the 1980s David Reeves co-wrote a number of songs that Run–D.M.C. later recorded.  In 1988 and 1989, in exchange for a share of the profits the songs would generate, Reeves transferred the entirety of his interest in those songs, in perpetuity, to an entity called Rush Groove, making the compositions "the sole

---

[2] Although the original complaint only named Reeves and Reach Music Publishing, Inc. as plaintiffs (see ECF No. 1), for purposes of the counterclaims "Reach" refers to Reach Music Publishing, Inc., Reach Global Inc., and Michael Closter.  (See ECF No. 23.)

[3] Michael Closter has filed a declaration with the Court in which he states that the Reach parties "will indemnify David Reeves for any damages he is assessed by the Court in this action."  (ECF No. 317 ¶ 2.)

[4] The background provided in this opinion is a summary, focusing on the events relevant to determining the proper measure of damages in this matter.  Further details are available in the Court's rulings at ECF Nos. 258 and 292, which are adopted and incorporated as part of the instant findings and conclusions.

property of [Rush Groove], everywhere and forever, with all copyrights therein and all renewals thereof, throughout the universe." (SWA[5] ¶ 2.)

The Songwriter Agreements were signed by Reeves, other co-writers of Run–D.M.C. songs, and Rush Groove. (Id. at p. 6.) Protoons was not a signatory to the Agreements, but was expressly identified as a third party beneficiary; an assignment of certain rights from Rush Groove to Protoons was also expressly anticipated in the contracts.[6] (Id. ¶ 9.) Despite these provisions, the Agreements provided that Reeves "shall look solely to [Rush Groove] for any and all payments due," and that "[u]nder no circumstances shall [Reeves] look to … Protoons for any payments in connection with the use, reproduction or other exploitation of the Composition." (Id. ¶ 14.)

One paragraph of the Songwriter Agreement established the procedures that would govern "any controversies regarding this agreement." (Id. ¶ 15.) It established that the contract would be construed according to New York law and that jurisdiction would lie in state and federal courts in New York. (Id.) It further provided that "it is agreed that the prevailing party in any finally adjudicated court

---

[5] References to "SWA" refer to an exemplar Songwriter Agreement filed under seal as ECF No. 318, Exh. A.

[6] Paragraph 9 of the Songwriter Agreement established that "[Reeves] specifically acknowledges that [Rush Groove] may assign this agreement to Protoons, Inc., including any or all of [Rush Groove's] rights and interests hereunder and the benefits of [Reeves's] warranties, representations, authorizations, duties, obligations, liabilities and indemnifications hereunder. [Reeves] specifically acknowledges and agrees that Protoons Inc. and its administrators, successors, licensees and assigns is and shall be deemed third party beneficiaries hereunder and shall have the right, in its and their own name(s), to institute any action or proceeding against [Reeves] to enforce all rights, privileges and benefits directly against [Reeves]. Notwithstanding anything in the foregoing to the contrary, it is specifically understood and agreed that [Rush Groove] shall not assign nor shall [Rush Groove] be deemed to have delegated to Protoons Inc., and Protoons Inc. shall not be deemed to have assumed, any of [Rush Groove's] warranties, representations, authorizations, duties, obligations, promises, agreements or liabilities hereunder. [Reeves] is not and shall not be deemed a third party beneficiary of any agreement or understanding between [Rush Groove] and Protoons Inc."

action between the parties shall be entitled to recover the reasonable attorney's fees incurred by such party in connection therewith."  (Id.)

Reeves received and accepted payments from Rush Groove until 1990, at which point he ceased receiving payments in connection with the songs at issue.

In 1998, Rush Groove entered into an agreement with Protoons and other entities in which Rush Groove confirmed its transfer of rights in the Run–D.M.C. songs to Protoons.  This agreement provided that Protoons would succeed to all rights, warranties, representations, and indemnifications made to Rush Groove. Reeves was not a party to this agreement.  Rush Groove apparently went out of business in 1999, although Protoons has alleged that it was never an incorporated company but instead a business entity run by its principals, Russell Simmons and Lyor Cohen.

The songs covered by the Songwriter Agreements went on to have a measure of commercial success; for example, one was the theme song of the MTV show "Run's House," which ran from 2005 to 2009.  During the same period Reeves became indigent; he was homeless in 2006 and 2007.

In 2007, Reeves entered into an agreement with Reach in which Reeves purported to transfer to Reach a 50% interest in all rights, title, interest, and ownership of the compositions in exchange for $55,000 and Reach's promise to pursue additional payments for the songs on his behalf, including through litigation.  Reeves expressly authorized Reach to pursue litigation to enforce their now-joint interest in the works.  At the time Reach entered into this 2007

agreement, it knew that Reeves had already entered into the Songwriter Agreements and thereby assigned any rights he had in the compositions.[7]

In May 2008, Reach contacted Protoons, asserting a copyright interest in Reeves's Run–D.M.C. works.  In June, Protoons responded that Reeves had previously assigned the entirety of his copyright interests in these works; Protoons further expressly stated that should Reach pursue litigation it would be "responsible for costs."

In September 2008, Reach and Reeves filed suit against Protoons and others seeking a declaration of their copyright and royalty interests in the compositions and damages.  (ECF No. 1 in 08-cv-7722 (LTS) ¶¶ 23-37.)  This complaint alleged that the federal courts had diversity jurisdiction over the action.  (See id. ¶ 2.)  After Judge Swain sua sponte ordered the plaintiffs to provide facts demonstrating a basis for subject matter jurisdiction, plaintiffs voluntarily dismissed the action without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  (ECF Nos. 6 & 7 in 08-cv-7722 (LTS).)

In October 2008, Reach and Reeves filed suit against Protoons and other defendants in the Supreme Court of the State of New York, County of New York. (Doc. No. 1 in 650360/2008 (Sup. Ct. N.Y.).)  Protoons moved to dismiss on the ground that plaintiffs' causes of action arose under the Copyright Act, over which federal district courts have exclusive jurisdiction pursuant to 28 U.S.C. § 1338. (Doc. Nos. 9 & 12 in 650360/2008 (Sup. Ct. N.Y.).)  The state court granted

---

[7] The Court made this determination after a bench trial.  (ECF No. 292, 468:14-15, 469:3-6.)

Protoons's motion and dismissed the case.  (Doc Nos. 32 & 33 in 650360/2008 (Sup. Ct. N.Y.).)

In June 2009, Reach and Reeves filed their third attempt at stating a claim, once again against Protoons and other defendants and once again in the Southern District.  (ECF No. 1.)  This lawsuit asserted both federal question and diversity jurisdiction.  (Id. ¶ 2.)  In July 2009, shortly after this third suit was filed, Protoons confirmed to Reeves and Reach that it was in possession of the dispositive Songwriter Agreements.  Reeves and Reach continued to prosecute the suit and, in November 2009, Protoons answered and filed counterclaims against Reeves for breach of contract, slander of title, and a declaration regarding duty to defend (ECF No. 23 ¶¶ 25-35, 42-51), and against Reach for tortious interference with contract.  (Id. ¶¶ 36-41.)

Two months later, in January 2010, Protoons provided Reeves and Reach with a copy of the Songwriter Agreement.  The plaintiffs/counterclaim defendants continued to prosecute the action.  In May 2010 they sought to amend their complaint.  (ECF No. 46.)  Protoons both opposed Reeves and Reach's motion to amend (ECF No. 53) and moved for summary judgement under Rule 56 as to Reeves and Reach's affirmative claims.  (ECF No. 49.)  In August 2010, Judge Swain denied the motion to amend as both untimely and futile and dismissed the complaint in its entirety with prejudice.  (ECF Nos. 60 & 61.)  Thus, as of August 2010, all that remained of the action were Protoons's counterclaims.  Those claims were eventually narrowed to a claim against Reeves for breaching the covenant not to sue

in the Songwriter Agreements, and a claim against Reach for tortious interference in connection with Reeves's breach of that covenant.  (ECF Nos. 95 & 129.)

After several years of continued litigation on the counterclaims, both parties moved for summary judgment.  (ECF Nos. 212 & 216.)  In November 2014, the Court[8] granted summary judgment to Protoons on its claim against Reeves.  (ECF No. 258.)  Protoons's tortious interference counterclaim against Reach proceeded to trial.  (Id. at 22-26.)

In March 2015, the Court held a two-day bench trial on the tortious interference counterclaim.  (ECF Nos. 287-92.)  At the conclusion of the trial, the Court ruled for Protoons from the bench, finding by a preponderance of the evidence that at the time of the 2007 contract between Reach and Reeves, Reach's principal "personally knew … that Reeves had signed the 1988 [Songwriter] agreement." (ECF No. 292, 468:14-15; see also id. 469:3-6 ("I have no doubt that he knew that an agreement existed and had existed at one point in time in substantially the form that it had been signed by the other Run–D.M.C. folks.").)

Although the Court's ruling resolved the final issue of liability in the case, neither the trial nor the summary judgment proceedings had quantified Protoons's damages.  Thus, following the trial, Protoons moved for damages against both Reeves and Reach.  (ECF No. 309.)  That is now before the Court as a trial on the papers.  (ECF No. 334.)

---

[8] This matter was reassigned from Judge Swain to the undersigned in May 2014.

II.   LEGAL PRINCIPLES

    A.   <u>Breach Of Contract Damages</u>

Under New York law, "[o]ne who violates his contract with another is liable for all the direct and proximate damages which result from the violation." <u>Nat'l Market Share, Inc. v. Sterling Nat'l Bank</u>, 392 F.3d 520, 525 (2d Cir. 2004) (quoting <u>Wakeman v. Wheeler & Wilson Mfg. Co.</u>, 4 N.E. 264 (N.Y. 1886)). As a general matter, "[u]nder New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F.3d 186, 196 (2d Cir. 2003).

When the breach is of a covenant not to sue, the measure of the successful party's damages does not include its litigation expenses unless the offending suit was "brought in obvious breach or otherwise in bad faith," or the no suit provision was drawn "in such terms as to make clear that any breach will entail liability for damages, including … defendant's litigation expenses." <u>Artvale, Inc. v. Rugby Fabrics Corp.</u>, 363 F.2d 1002, 1008 (2d Cir. 1966). This reflects the "American Rule," which, as the Second Circuit has explained, dictates that "courts applying New York law 'should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract.'" <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 177 (2d Cir. 2005) (internal quotation marks omitted) (quoting <u>Oscar Gruss</u>, 337 F.3d at 199).

B.      Tortious Interference Damages

"[U]nder New York law, a plaintiff in a tortious interference with contract case is entitled to damages in the amount of the full pecuniary loss of the benefits of the contract, and … 'the elements of damages, including consequential damages, [are] those recognized under the more liberal rules applicable to tort actions.'"  Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 597 (2d Cir. 1996) (final alteration in original) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 452 n.6 (N.Y. 1980)); see also Restatement (Second) of Torts § 774A (1977) (identifying "consequential losses for which the interference is a legal cause" as one of the components of damages in tortious interference cases).

C.      Copyright Act Attorney's Fees

Section 505 of the Copyright Act provides that "[i]n any action under this title, the court in its discretion may allow the recovery of full costs," and further that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  The factors that properly guide the Court's discretion include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)); see also 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 264 (2d Cir. 2015).  The "objective reasonableness," or lack thereof, of a defeated party's litigating position "is a factor that should be given substantial

weight in determining whether an award of attorneys' fees is warranted." Matthew Bender & Co. v. W. Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001).

Prevailing plaintiffs and prevailing defendants are subject to the same standards under § 505. See Fogerty, 510 U.S. at 522-33. Where an unsuccessful "claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling." Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 436-37 (7th Cir. 2004) (Posner, J.). However, an award under § 505 is never automatic, but is instead committed to the Court's discretion. See Fogerty, 510 U.S. at 533.

D.   Punitive Damages

Under New York law, "[p]unitive damages are awarded in tort actions 'where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime.'" Prozeralik v. Capital Cities Commc'ns, Inc., 626 N.E.2d 34, 41-42 (N.Y. 1993) (alteration omitted) (quoting William Lloyd Prosser, et al., Prosser and Keeton on Torts § 2 at 9 (5th ed. 1984)). "[P]unitive damages [are] recoverable in a contract action only 'if necessary to vindicate a public right.'" TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005) (quoting New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995)); see also id. ("[Punitive] damages [are] recoverable when the breach … involved a particularly egregious fraud that 'was aimed at the public generally.'" (quoting Rocanova v. Equitable Life Assur. Soc. of the U.S., 634 N.E.2d 940, 943 (N.Y. 1994))).

III.   DISCUSSION

Determining whether and to what extent Protoons is entitled to damages requires analyzing Reeves's and Reach's liability separately and analyzing liability for the damages associated with each stage of the proceedings separately.  The Court then turns to the question of punitive damages and to the fact-specific inquiry by which Protoons' damages are calculated.

A.   <u>Reeves's Liability For Breach Of Covenant Not To Sue</u>

As discussed above, Reeves is liable for breaching the covenant not to sue in the Songwriter Agreement.  (ECF No. 258.)  He is therefore liable for the litigation expenses associated with that breach only if it "is unmistakably clear from the language of the contract" that the parties intended such expenses as damages for breach of contract.  <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 177 (2d Cir. 2005) (internal quotation marks omitted) (quoting <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F.3d 186, 199 (2d Cir. 2003)).

The Songwriter Agreement establishes that "the prevailing party in any finally adjudicated court action between the parties shall be entitled to recover the reasonable attorney's fees incurred by such party in connection therewith."  (SWA ¶ 15.)  It is unmistakably clear from this language that attorney's fees may be recovered following certain legal actions.  However, it is also unmistakably clear that fees are only available following legal actions that meet the conditions listed in the contract.  Specifically, the attorney's fees provision of the Songwriter Agreement sets out six limitations on the availability of the fees Protoons seeks.

First, there must have been a "court action."  Second, that action must have been "between the parties" to the Agreement.  Third, that action must have been "finally adjudicated."  Fourth, the entity claiming fees must have been "the prevailing party" in the action.  Fifth, the fees claimed must have been "incurred by [the prevailing] party in connection []with" the action.  Finally, the action must have been a "controvers[y] regarding this agreement."

The sixth requirement, that only controversies regarding the Songwriter Agreement will give rise to an obligation to pay attorney's fees, reflects the requirement under New York law that clauses indemnifying parties for fees must be construed strictly.  See Mid-Hudson Catskill, 418 F.3d at 179 (citing Hooper Assocs., Ltd. v. AGS Computs., Inc., 548 N.E.2d 903, 905 (N.Y. 1989)).  Paragraph 15 of the Songwriter Agreement, which contains the fee-shifting provision at issue, addresses the parties' rights under the Songwriter Agreement specifically: the first sentence explains who is bound by the agreement, the next establishes that it will be construed under New York law, the third provides for exclusive jurisdiction in New York state and federal courts for "any controversies regarding this agreement," the fifth establishes the severability of the agreement's various provisions, and the sixth explains how the agreement may be executed.  The attorney's fees provision appears in the midst of these agreement-centered arrangements and thus must be strictly construed to concern the same set of court actions for which the rest of the paragraph provides the controlling law, venue, and scope; the indemnity clause cannot be read to create a free-floating right to attorney's fees in actions other than "controversies regarding this agreement."

Applying the six conditions in the Songwriter Agreement's attorney's fees provision to Protoons' request for damages demonstrates that Reeves is liable for some, but not all, of the amount Protoons seeks. First, he is not liable for any fees associated with the complaint he and Reach filed in this court in September 2008. The plaintiffs voluntarily dismissed that matter without prejudice. (ECF Nos. 6 & 7 in 08-cv-7722 (LTS).) It was therefore not a "finally adjudicated" court action. See U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc., 775 F.3d 128, 139-40 (2d Cir. 2014) (reversing the district court's conclusion that a voluntary dismissal can be a final adjudication on the merits because such a rule "redefine[es] a 'dismissal without prejudice' as its 'opposite,' an 'adjudication upon the merits'" (quoting Semtek Int'l v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001))); Unite Here v. Cintas Corp., 500 F. Supp. 2d 332, 337 (S.D.N.Y. 2007) (holding that, under the Private Securities Litigation Reform Act of 1995, a plaintiff's voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(i) does not constitute a 'final adjudication'")). The Songwriter Agreement must be strictly construed to limit Reeves's obligation to indemnify Protoons for its attorney fees to finally adjudicated matters, and therefore any fees and expenses associated with the September 2008 federal court filing are not included.

The same result obtains for the fees associated with the October 2008 state court filing. That matter was resolved when the state court dismissed Reeves and Reach's complaint for lack of subject matter jurisdiction. (Doc Nos. 32 & 33 in 650360/2008 (Sup. Ct. N.Y.).) "[A] dismissal for lack of subject matter jurisdiction is not an adjudication of the merits." St. Pierre v. Dyer, 208 F.3d 394, 400 (2d Cir.

2000); see also Anwar v. Fairfield Greenwich Ltd., No. 09 Civ. 118 (VM), 2015 WL
4610406, at *3 (S.D.N.Y. July 29, 2015) ("Dismissals for lack of subject matter
jurisdiction are necessarily without prejudice, because the alternative—dismissal
with prejudice—would have 'the effect of a final adjudication on the merits' with res
judicata effect in both state and federal court." (quoting Hernandez v. Conriv Realty
Assocs., 182 F.3d 121, 123 (2d Cir. 1999))).  Indeed, such a dismissal is in fact a
determination that the dismissing court "lacks the statutory or constitutional power
to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The
state court action was therefore not a "finally adjudicated" court action, and the
Songwriter Agreement's attorney's fees provision does not encompass the fees
Protoons expended litigating that matter.

The instant action, in contrast, has been "finally adjudicated" for liability
purposes, and this opinion and order is the final adjudication of damages.  (ECF
Nos. 309 & 334.)  The dismissal of plaintiffs' complaint with prejudice (ECF No. 61),
the grant of summary judgment on Protoons's breach of contract counterclaim (ECF
No. 258), and the decision on the record following trial on Protoons's tortious
interference counterclaim (ECF No. 292) were all final decisions disposing of the
merits and subject to appeal.  See, e.g., Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir.
1986) ("A dismissal with prejudice has the effect of a final adjudication on the
merits ….").  They are also all part of a "court action" in which Protoons was "the
prevailing party," and by definition any claimed fees stemming from the instant
action were "incurred … in connection therewith."

14

The three components of the instant action (that is, plaintiff's affirmative claims and defendant's counterclaims for breach of contract and tortious interference) potentially differ from one another in whether they are actions "between the parties" and whether they are "controversies regarding this agreement."  For purposes of determining Reeves's liability, each claim must be evaluated separately; if this were not the case, then had Protoons asserted a claim against its co-defendant and prevailed, Reeves would be responsible for Protoons' fees simply because the claim related to the same action.  This would run counter to the language in the Songwriter Agreements limiting the responsibility for fees to those incurred in actions "between the parties" and would be an interpretation inconsistent with the requirement that such provisions be construed strictly.

The fees associated with the first component of the instant action, Reeves and Reach's claims against Protoons seeking a declaration of their copyright and royalty interests in the compositions and damages for the alleged failure to account, fall squarely within the attorney's fees provision of the Songwriter Agreement.  The claims were asserted by Reeves directly against Protoons and thus were "between the parties."  The claims were also based on Reeves's purported copyright and royalty interests in the compositions, the precise subject matter of the Songwriter Agreements.  The action Reeves and Reach initiated to establish Reeves's rights was thus a "controvers[y] regarding this agreement;" specifically, a controversy over the agreement's existence.  Therefore all of the conditions in the contract are met and Reeves is liable for the reasonable attorney's fees Protoons incurred in

connection with defending against Reeves and Reach's affirmative claims in the instant action.

The fees associated with the second component of the instant action, Protoons's counterclaim against Reeves for breach of contract, are also available against Reeves as damages.  This counterclaim arranged Reeves and Protoons against one another and thus was "between the parties."  The merits of the claim turned on whether Reeves had violated the Songwriter Agreement's requirement that he not sue Protoons; the meaning and validity of the contract was directly at issue, and thus the breach of contract counterclaim was a "controvers[y] regarding this agreement."  Therefore all of the conditions in the contract are met and Reeves is liable for the reasonable attorney's fees Protoons incurred in connection with prosecuting its breach of contract counterclaim in the instant action.

The fees associated with the third component of the instant action, Protoons's counterclaim against Reach for tortious interference with contract, are not available against Reeves as damages.  That claim was asserted against Reach, not Reeves. (See ECF Nos. 95 & 129.)  Indeed, under New York law, "a plaintiff bringing a tortious interference claim must show that the defendants were not parties to the contract."  Finley v. Giacobbe, 79 F.3d 1285, 1295 (2d Cir. 1996) (some emphasis in original omitted) (citing Israel v. Wood Dolson Co., 134 N.E.2d 97, 99 (N.Y. 1956)). The tortious interference counterclaim was therefore not an action "between the parties" to the Songwriter Agreement, as Reach was not a party to that contract.

The tortious interference counterclaim was also not a "controvers[y] regarding this agreement" once the breach of contract counterclaim had been

decided in Protoons's favor.  When the Court granted summary judgment on the breach of contract component, it necessarily and explicitly rejected as a matter of law the arguments that the Songwriter Agreement was unenforceable, invalid for failure of consideration, invalid because of unilateral mistake, or unconscionable. (ECF No. 258, at 13-16.)  In its decision denying summary judgment on this claim, the Court identified the sole triable issue as when "Reach gained knowledge of the covenant not to sue." (Id. at 25.)  Thus, even if the tortious interference counterclaim was an action "between the parties," the portion of it that followed the Court's decision on summary judgment would still not fall within the attorney's fees provision of the Songwriter Agreement and thus would still not be properly charged to Reeves under that provision.

In sum, Reeves is liable for Protoons's attorney's fees as damages for his breach of the covenant not to sue because the Songwriter Agreement unmistakably anticipates such liability.  However, the same agreement restricts that liability to actions that meet six criteria, and in this case only the fees stemming from Protoons's defense against the affirmative claims in the instant action and prosecution of its breach of contract counterclaim against Reeves meet those criteria.

B.   <u>Reach's Liability For Tortiously Inducing Reeves To Breach The Covenant Not To Sue</u>

As discussed above, Reach is liable for tortiously interfering with the contract between Reeves and Protoons.  (ECF No. 292.)  It is therefore liable for "damages in the amount of the full pecuniary loss of the benefits of the contract, and … 'the elements of damages, including consequential damages, [are] those recognized

17

under the more liberal rules applicable to tort actions.'" <u>Int'l Minerals & Res., S.A. v. Pappas</u>, 96 F.3d 586, 597 (2d Cir. 1996) (final alteration in original) (quoting <u>Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.</u>, 406 N.E.2d 445, 452 n.6 (N.Y. 1980)).  Protoons seeks attorney's fees as consequential damages.

The Court's summary judgment opinion identified "attorneys' fees and costs" as the damages that flowed from Reach's tortious interference.  (ECF No. 258 at 22.) Courts have differed as to whether such fees and costs are appropriate damages for a tortious interference claim, in some cases awarding attorney's fees as consequential damages and in others refusing to do so.  <u>Compare, e.g.</u>, <u>Jean v. Auto & Tire Spot Corp.</u>, No. 09–CV–5394 (ARR)(RLM), 2013 WL 2322834, at *6 (E.D.N.Y. May 28, 2013) (awarding attorney's fees as consequential damages), <u>with Automotive Elec. Serv. Corp. v. Assoc. of Automotive Aftermarket Distribs.</u>, 747 F. Supp. 1483, 1507-08 (E.D.N.Y. 1990) (rejecting attempt to prove damages element of a tortious interference claim by reference to attorney's fees incurred).

In this case, an award of certain attorney's fees and costs is an appropriate measure of the damages for which Reach is liable.  The nature of Reach's tortious interference was to induce Reeves to enter into an agreement to transfer a portion of his (already transferred) copyright interest to Reach, and then to file a lawsuit against Protoons.  Reach undertook this strategy despite knowing that Reeves had signed the Songwriter Agreements and, as the Court has found, specifically knowing that those Agreements contained a covenant not to sue.  It was inevitable that Protoons would be forced to incur attorney's fees and costs in the ensuing litigation.  Indeed, those fees and costs might even be characterized not as

consequential damages but as 'benefit of the bargain' damages, as they are exactly the expenses Reeves promised not to force Protoons to incur when he entered into a contract with a non-suit provision.  However defined, Protoons's attorney's fees and costs defending the suits Reeves and Reach brought are an appropriate component of damages for Reach's tortious interference.

Reach is also liable for the attorney's fees and costs Protoons incurred in prosecuting its counterclaim for breach of contract against Reeves.  Reach's conduct had demonstrated its interest in challenging Protoons's property rights in the composition.  Reeves's defense to the counterclaim was that the Songwriter Agreement was unconscionable or otherwise invalid, and had this defense prevailed Protoons's copyright interests would have been severely impaired, if not eliminated. Moreover, such a ruling might have impaired not just Protoons's interests in the compositions Reeves co-wrote but also the interests in many other properties that had been conveyed by similar contracts.  It was therefore predictable and appropriate that Protoons, having been haled into court by Reeves and Reach's complaint, would seek to vindicate its contractual rights to the compositions.  The attorney's fees and costs Protoons incurred in prosecuting the breach of contract counterclaim are therefore also an appropriate component of Reach's liability for tortious interference.

Protoons cannot, however, recover the cost of seeking a liability determination on its tortious interference counterclaim.  "New York case law repeatedly makes clear … that such fees are recoverable only where a party has been forced to expend them in some 'earlier litigation.'"  <u>Amusement Indus., Inc. v.</u>

Stern, 786 F. Supp. 2d 741, 757 (S.D.N.Y. 2011) (quoting Shindler v. Lamb, 211
N.Y.S.2d 762, 765 (N.Y. Sup. Ct. 1959)).  New York law requires those liable for
tortious interference to pay "consequential losses for which the interference is a
legal cause."  Restatement (Second) of Torts § 774A (1977).  If the cost of
prosecuting a tortious interference claim was a "consequential loss," it would mean
that attorney's fees were available in every successful tortious interference case.
This would make tortious interference an exception to the American Rule, under
which the cost of prosecuting a tort action is borne by the prosecuting party and
does not become a component of damages even if the action succeeds.  See Coopers
& Lybrand v. Levitt, 384 N.Y.S.2d 804, 806-07 (N.Y. App. Div. 1976).  New York law
is clear, however, that the American Rule applies to tortious interference claims.
See Queenie, Ltd. v. Nygard Int'l, 204 F. Supp. 2d 601, 607 (S.D.N.Y. 2002) ("[W]e
reject the contention that attorneys fees are compensable as actual damages for [a]
tortious interference claim."); Macy's, Inc. v. J.C. Penney Corp., 989 N.Y.S.2d 238,
265-66 (N.Y. Sup. Ct. 2014) (applying the American Rule to a tortious interference
claim), aff'd as modified, 6 N.Y.S.3d 7 (N.Y. App. Div. 2015).  Therefore, under New
York law Reach's liability for tortious interference excludes the fees associated with
prosecuting that specific counterclaim.

        In sum, Reach is liable for Protoons's attorney's fees and costs as damages for
its tortious interference with the contract between Reeves and Protoons.  However,
that liability is limited to the fees and costs Protoons incurred in defending itself in
the three actions Reeves and Reach filed and prosecuting its breach of contract
counterclaim against Reeves.  The fees and costs associated with prosecuting the

tortious interference counterclaim alone are not chargeable to Reach as tortious interference damages.

      C.     <u>Reeves and Reach's Liability For Attorney's Fees Under § 505 Of The Copyright Act</u>

An award of attorney's fees in this matter is appropriate to promote the purposes of the Copyright Act. Making Reeves and Reach liable for Protoons's attorney's fees will "encourage the origination of creative works by attaching enforceable property rights to them." <u>Matthew Bender & Co. v. W. Publ'g Co.</u>, 240 F.3d 116, 122 (2d Cir. 2001) (quoting <u>Diamond v. Am-Law Publ'g Corp.</u>, 745 F.2d 142, 147 (2d Cir. 1984)). The fees award will discourage bad faith attempts to undercut contractual transfers of property rights.

The Court has already determined both that Reeves transferred his copyright interest in the compositions via the valid, enforceable Songwriter Agreements, in which he specifically promised not to sue Protoons in connection with those interests. (ECF No. 258.) The Court has also determined that Reach was aware of that contractual transfer and even the specific non-suit provision when it initiated this litigation. (ECF No. 292.) Once Protoons produced the Agreements and thereby proved that it had not lost the paperwork documenting its interest in the songs Reeves co-wrote, Reeves and Reach conceded that the contracts transferred Reeves's copyright interest. (ECF No. 48.) Thus, Reeves and Reach knew that Reeves had effectively transferred his copyright interest in the compositions when they initiated this litigation via a complaint that alleged "that they possess all rights in and to Reeves' copyright and royalty interests in the Compositions,

including both the so-called publisher's and writer's shares therein." (ECF No. 1 ¶ 42.)

"[B]ad faith in the conduct of the litigation is a valid ground for an award of fees" under § 505. Matthew Bender, 240 F.3d at 125. The initiation of the instant action was objectively unreasonable in light of the plaintiffs' knowledge of the Songwriter Agreements. Protoons did not stand to receive any monetary relief for prevailing in its defense against plaintiffs' claims, which makes "the case for awarding [it] attorneys' fees … compelling." Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 436-37 (7th Cir. 2004) (Posner, J.) Congress created § 505 to encourage the vindication of enforceable property rights, and when a rightful copyright owner defends itself from a bad faith claim that it has infringed the copyright it actually owns, an award of attorney's fees is appropriate. This is such a case.

There remains, however, the question of which attorney's fees are recoverable under § 505; as discussed above repeatedly, this litigation has unfolded across a number of years, claims, and courts. The same was true in Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366 (2d Cir. 1993). In that case, an alleged infringing party sought a declaration of its rights by filing suit in the Northern District of Illinois. Id. at 1371. The copyright owner successfully moved to dismiss that action for lack of personal jurisdiction and then filed an action for copyright infringement in the Southern District of New York. Id. The copyright owner's suit was successful, and the district court made an award under § 505 for the copyright owner's fees in both the Illinois and New York actions.

Id.  The Second Circuit approved this "somewhat unusual" award because the copyright owner's "decision to seek dismissal of the Illinois action on jurisdictional grounds and to bring the action in New York can be seen as part of a unified course of action of vindicating its copyrights."  Id. at 1383; see also id. ("Had [the copyright owner] interposed its copyright claims by way of a counterclaim in a single action, it would have been allowed recovery of all fees.").  Under Second Circuit precedent, therefore, the remedies in § 505 of the Copyright Act are not strictly limited to the instant action.

Applying Twin Peaks to the facts of the instant case, it is clear that § 505 permits an award of fees not only for the instant action but also for the first federal action and the state action.  As in Twin Peaks, both of those actions were dismissed on jurisdictional grounds and form part of the unified course of action between Reeves, Reach, and Protoons by which the copyrights in the compositions were established.  The complaints in those cases seek declarations of Reeves and Reach's ownership of copyrights and Protoons's lack thereof.  (See ECF No. 1 in 08-cv-7722 (LTS) ¶ 28; Doc. No. 1 in 650360/2008 (Sup. Ct. N.Y.) ¶ 26.)  Litigating those matters was necessary for Protoons to vindicate its property interest, and an award of attorney's fees under § 505 is appropriate and advances the purposes of the Copyright Act.

The same analysis clearly applies to the fees Protoons incurred defending against Reeves and Reach's affirmative claims in the instant action.  There is no question that this is a "civil action under [the Copyright Act]," and as discussed

above an award of the attorney's fees incurred defending the initial claims against Protoons's copyright interest advances the purposes of that Act.

Protoons's entitlement to a § 505 award for the fees expended prosecuting its counterclaims is less certain. In InvesSys, Inc. v. McGraw-Hill Co., 396 F.3d 16 (1st Cir. 2004), the First Circuit considered "the problem of [§ 505 remedies in] a case with a mix of claims." Id. at 19. In that case, the only legal question tried to the jury was a state-law contract issue; the contract in question purported to transfer copyright interests. See id. at 18. After the jury answered the state-law question, the district court entered judgment and included a § 505 award payment. Id. The First Circuit affirmed, noting that because "the issue actually litigated was necessary to the assertion of [the copyright] claim," it would "serve[] Congress's purpose to compensate the winning side for attorney's fees and costs." Id. at 20. The First Circuit went on, however, to note that "if, for example, independent issues were raise and litigated as to fraud that were unnecessary to resolving the ownership issue," that would "indicat[e] that significant extra moneys were expended," and allocation of fees and costs between the copyright and state law claims would be "required." Id.

Courts in this district and circuit have also followed an allocation model when awarding attorney's fees under § 505 of the Copyright Act in cases presenting a mix of claims. In Universal City Studios, Inc. v. Nintendo Co., 615 F. Supp. 838 (S.D.N.Y. 1985), the district court considered a number of counterclaims, including one for tortious interference, filed by an alleged infringer that had already defeated the initial infringement claim against it. See id. at 840; 578 F. Supp. 911 (S.D.N.Y.

24

1983) aff'd 746 F.2d 112 (2d Cir. 1984).  In a lengthy and well-reasoned opinion, the district court found that the counterclaim defendant was liable for both vicarious copyright infringement and tortious interference, but limited its award under § 505 to only those attorney's fees incurred in establishing the vicarious infringement counterclaim, not those incurred in connection with the tortious interference counterclaim.  See Universal, 615 F. Supp. at 863-64.  The Second Circuit affirmed this allocation and noted that the award of fees "for the time spent on the vicarious copyright infringement claim …. was well within the district court's discretion." 797 F.2d 70, 78 (2d Cir. 1986).

Under the allocation principle, Protoons is entitled to a § 505 award for its fees expended prosecuting the breach of contract counterclaim against Reeves but not for its fees expended prosecuting the tortious interference counterclaim against Reach.  The breach of contract action raised legal issues that went to the heart of Protoons's property interests in the compositions, specifically whether the Songwriter Agreements were unconscionable or otherwise invalid.  The litigation of that counterclaim was necessary to fully vindicate and assert Protoons's intellectual property interests, and it raised issues that would have been necessarily litigated if, for example, Protoons had affirmatively sought a declaration of its copyright interest in the compositions rather than counterclaiming.

In contrast, the prosecution of the tortious interference counterclaim alone did not implicate the interests and purposes of the Copyright Act.  Although the validity of the Songwriter Agreements was a threshold issue for the tortious interference counterclaim, that issue was settled by the Court's grant of summary

judgment on the breach of contract counterclaim.  All of the proceedings that followed were, or could have been, limited to questions about Reach's knowledge of the covenant not to sue, an issue that had no bearing on Protoons's property rights. Awarding attorney's fees for such litigation would not advance the purposes of the Copyright Act and is thus inappropriate under § 505.

      D.    <u>Punitive Damages</u>

This case does not meet the demanding punitive damages standard.  <u>See</u> <u>TVT Records v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 94 (2d Cir. 2005).  Reeves and Reach brought a lawsuit they were contractually prohibited from bringing, but their liability for that fact is captured by assessing damages for breach of contract and tortious interference and awarding attorney's fees in accordance with the provisions of the breached Songwriter Agreements.  Although this litigation stretched over several years, that fact is not solely attributable to Reeves and Reach.  For example, after Protoons produced the Songwriter Agreements, Reeves and Reach did not ignore the plain terms but instead "acknowledge[ed] that those agreements assign and transfer the copyright ownership interest of Reeves." (ECF No. 48.)  This well-founded concession was dispositive as to the affirmative claims in their complaint, which were promptly dismissed following the concession.  (ECF No. 60.)

The Court finds that punitive damages are not necessary in this case to deter violations like the breach of contract and tortious interference for which Reeves and Reach are liable.  Similarly, punitive damages are not necessary in this case to vindicate any public interest that consequential damages would inadequately address.  Therefore, no punitive damages shall be assessed.

E.   Fact-Specific Analysis Of Damages Amounts

In addition to challenging their legal liability for damages, Reeves and Reach also challenge a number aspects of Protoons's damages request.

1.   Protoons's Alleged Failure To Mitigate

Reeves and Reach allege that Protoons failed to mitigate the damages it suffered from Reeves's breach of contract and Reach's tortious interference in two ways.  First, Protoons did not produce a copy of the Songwriter Agreements until January 2010, more than a year and a half after Reach first contacted Protoons regarding Reach's claim to a copyright interest in Reeves's Run–D.M.C. works.  Second, Protoons did not move for attorney's fees after Judge Swain dismissed Reeves and Reach's affirmative claims.  Third, Protoons did not inform the district court of federal question jurisdiction during the first federal action.  All of these arguments are without merit.

Protoons was under no obligation to produce the contracts before litigation and it is not clear that doing so would have limited this litigation; after Protoons did produce the Songwriter Agreements, Reeves and Reach still moved to amend their complaint to assert new claims.  (ECF No. 46.)  Moreover, the Court has already found that in 2007 Reach knew that Reeves had signed the Songwriter Agreements.  (ECF No. 292, 468:14-15, 469:3-6.)  The Court further concluded that Protoons was under no obligation to provide copies of the Agreements before discovery.  (Id., 470:1-9.)  Reach and Reeves may have changed their litigation strategy had they known that Protoons still had the necessary documentation of the contracts, but Protoons was under no obligation to make plaintiffs' fishing expedition more

27

efficient.  The fact that Protoons did not make a document disclosure until the appropriate moment in discovery is not a basis on which the Court will limit Protoons's recovery.

Protoons was similarly under no obligation to abandon its counterclaims or move for immediate attorney's fees upon dismissal of plaintiffs' affirmative claims. Nor is it clear that moving for attorney's fees under § 505 of the Copyright Act or the fee-shifting provision of the Songwriter Agreement at an earlier stage would have mitigated any of the damages Protoons seeks.  As discussed above, Reeves and Reach are each liable for the attorney's fees Protoons expended prosecuting its breach of contract counterclaim.  Thus, Protoons would have been entitled to seek damages a second time after it earned judgment on its counterclaims, likely leading to duplicative litigation on attorney's fees.  Protoons's decision to establish liability before damages is not, in this case, a proper basis to limit its recovery.

Finally, Protoons was under no obligation to act to prevent Reeves and Reach from voluntarily dismissing their first-filed federal action.  Protoons did not move to dismiss that action; instead, Judge Swain <u>sua sponte</u> ordered plaintiffs to demonstrate a basis for subject matter jurisdiction.  (ECF No. 6 in 08-cv-7722 (LTS).)  Reeves and Reach's complaint in that matter explicitly raises the question of their ownership "of each of the copyrights in and to the Compositions."  (ECF No. 1 in 08-cv-7722 (LTS) ¶ 30.)  Reeves and Reach voluntarily dismissed their action rather than substantively respond to Judge Swain's order, and they did so before Protoons had ever answered or appeared in the matter.  Protoons's recovery will not be reduced on the basis of plaintiffs' litigation decisions.

2.     Fees Expended On Levinsohn

Reeves and Reach argue that any fee award should not include the time charged by Mark Levinsohn.  Protoons represents that Levinsohn drafted the Songwriter Agreements and provided background information about the transactions at issue.  (ECF No. 311, ¶¶ 31-34.)  Protoons included $111,856.25 in Levinsohn's fees and $49.25 in Levinsohn's costs in its damages request.  (Id. ¶ 34.)

The Court agrees with Reeves and Reach that is not appropriate to include hours billed by a transactional attorney in this matter.  Protoons's description of Levinsohn's contributions indicate that he served as a fact witness.  He is not alleged to have provided legal services in the course of the litigation; indeed, Protoons's submissions explicitly identify him as "Protoons' transactional attorney." (Id. ¶ 32.)  As Reeves and Reach point out, Protoons could have subpoenaed Levinsohn and compelled his testimony without incurring a significant hourly rate. Fed. R. Civ. P. 45.  Protoons has not identified any precedential support for its request that Levinsohn's fees be bundled into the fees its litigating attorneys incurred, and the Court finds that doing so would be inappropriate under the facts of this case.  The fees and costs for which Levinsohn was responsible will therefore not be awarded.

3.     Proportionality Between The Fee Request And The Amount In Controversy

Reeves and Reach argue that Protoons's request for more than $ 2 million in fees is improperly large given the relative absence of evidence as to the economic value of the particular copyrights at issue.  This argument fails for two reasons.

29

First, Congress's purpose in enacting the fee-shifting rule in § 505 of the Copyright Act was precisely to incentivize and reward efforts to assert intellectual property rights. When defendants successfully vindicate their copyright interests the fees they recover will frequently constitute the full extent of their recovery. Reeves and Reach have not identified any suggestion that Congress intended to link the remedies it provided in § 505 to the economic value of the underlying property, and this Court cannot see any justification for such a rule.

Second, the implications of the legal challenges in this case were wider than the particular compositions at issue. Protoons's experts have testified, both by affidavit and during the tortious interference trial, that non-recourse and fee-shifting provisions are found in other industry contracts. A finding that the Songwriter Agreement was unconscionable or otherwise invalid, as Reeves and Reach asserted in litigating the breach of contract counterclaim, could well have called the validity of many similar contracts into question. Under these circumstances Protoons was dedicated to vindicating its contractual rights, and its successful efforts to do so will not be reduced based on a comparison with the uncertain value of the particular compositions in which Reeves and Reach asserted a copyright interest they knew had been entirely assigned years before.

4.   _Protoons's Litigation Tactics_

Reeves and Reach fault Protoons for employing "scorched-earth tactics" in the process of litigating this case and seek a number of reductions for specific tasks alleged to have been wasteful. The Court has reviewed those tasks and concludes that they are not an appropriate basis for an award reduction. None of the

allegedly unnecessary or inefficient tasks demonstrate bad faith or other excessive or redundant litigation practices that should be affirmatively deterred.

### 5.   Redactions In Billing Records and Block Billing

Reeves and Reach note that the invoices Protoons submitted include redactions and some block billing.  Some entries, totaling $23,294, are redacted completely.  Other entries, totaling $358,229, are partially redacted.  In addition to these, Reeves and Reach highlight examples of circumstances in which Protoons's attorneys aggregated a dozen or more tasks into single entries that covered nine or more hours.  This practice of block-billing "can make it difficult for a court to conduct its reasonableness analysis, because a single billing entry might mix tasks that are compensable with those that are not."  Hnot v. Willis Grp. Holdings Ltd., No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. April 7, 2008).

The Court has reviewed every invoice submitted in this case, and agrees that the redactions and block-billing complicate efforts to comprehensively assess the reasonableness of the fees and expenses in this case.  This is particularly so here, where there must be some delineation of expenses incurred in prosecuting tortious interference claims, which are not recoverable, from all other legal work, which is.  However, in these invoices the examples of redactions and block-billing are certainly the exception, rather than the rule.  The large majority of the entries are detailed, specific, and fully disclosed.  The Court therefore concludes that the combined effects of redaction and block-billing in this case are appropriate captured by reducing the final award by five percent.

F.    Results Of The Above

Protoons seeks a total of $1,980,545 in attorney's fees and $273,545 in costs for a total of $2,254,090. (ECF No. 311, ¶ 5.) As discussed above, this total includes $111,905 in fees and costs billed by Mark Levinsohn; that amount will be deducted. (Id. ¶ 34.) The total also includes $104,017 in fees and costs billed by Nancy Harkness, an expert on industry customs hired by Protoons. (Id. ¶ 38.) The Court's review of her expert report demonstrates that its topic was whether Reach acted in accordance with industry customs when it entered into the 2007 agreement with Reeves. (Id. Exh. H.) This was only relevant to the tortious interference counterclaim, and as such the amounts associated with Harkness will similarly be deducted. Subtracting the Levinsohn and Harkness costs from Protoons's total requested award reduces it to $2,038,168.

As discussed above, the Court granted summary judgment to Protoons on the breach of contract counterclaim in an opinion issued November 10, 2014. (ECF No. 258.) After that opinion was issued, the only remaining issue in the case was the tortious interference counterclaim, for which Protoons cannot recover its attorney fees and costs. Therefore, the fees and costs incurred after November 10, 2014, which according to Protoons's records total $352,544, will be deducted. (ECF No. 311, Exhs. B & C.) This reduces the total potential award to $1,685,624.

Accounting for the amounts spent on the tortious interference claim before November 10, 2014, requires the Court to parse the invoices Protoons has submitted for review. In some circumstances, the fees attributable to the tortious interference claim are apparent: Protoons itself has identified at least $41,806 in attorney's fees

that, by its own accounting, were incurred in December 2009 solely relating to the tortious interference counterclaim. (Id., p. 12.) That amount will be deducted, bringing the total potential award to $1,643,818.

The Court's review of Protoons's records demonstrates that for many other months it is not possible to precisely delineate what legal expenses would not have been incurred but for the pursuit of the tortious interference counterclaim. Much of the pre-November 2014 preparation would no doubt have been required even in the absence of this claim, because at that time the breach of contract action, for which Protoons is entitled to recover its fees, remained unresolved. In circumstances such as these, it is appropriate to reduce a fee award by some percentage after assessing the state of the case at various points in time and the work that the tortious interference counterclaim necessitated. See Beastie Boys Monster Energy Co., 112 F. Supp. 3d 31, 58 (S.D.N.Y. 2015). The Court concludes, based on its review of the descriptions and details in the invoices, that a further ten percent reduction of the total fee award appropriately reflects the percentage of the effort of Protoons's counsel before November 2014 that was dedicated to prosecuting the tortious interference counterclaim.

This ten percent deduction is combined with the five percent reduction for block-billing and redactions discussed above. Applying these reductions to $1,643,818, the operative amount of fees and costs after the appropriate deductions, reduces the total award to its final amount, $1,397,245.

IV.     CONCLUSION

For the reasons stated above, Protoons's motion for damages is GRANTED. Damages in the amount of $1,397,245 are awarded as set forth above.  The Clerk of Court is directed to terminate the motion at docket number 309 and to terminate this matter.


SO ORDERED.

Dated:          New York, New York
                February 19, 2016

_____
          KATHERINE B. FORREST
          United States District Judge